UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| WI-LAN, INC., ) | | Case No.: C 10-80254 JF (PSG) |
| ) | | |
| Plaintiff, ) | | **ORDER GRANTING-IN-PART AND** |
| v. ) | | **DENYING-IN-PART TOWNSEND** |
| ) | | **AND TOWNSEND AND CREW LLP'S** |
| LG ELECTRONICS, INC. and LG ) | | **MOTION TO QUASH SUBPOENA** |
| ELECTRONICS USA, INC., ) | | ***DUCES TECUM*** |
| ) | | |
| Defendants. ) | | (Docket No. 1) |

On September 20, 2010, Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. ("LG") served Townsend and Townsend and Crew LLP[1] ("Townsend") with a subpoena *duces tecum* to appear for deposition and to produce responsive documents. Townsend moves to quash the subpoena on the following grounds: (1) the subpoena seeks disclosure of matters protected by both the attorney-client privilege and the work product doctrine where no subject-matter waiver has occurred; and (2) the subpoena seeks disclosure of opinion work product to which subject-matter waiver cannot extend. LG opposes the motion. On January 18, 2011, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, Townsend's motion to quash is GRANTED-IN-PART and DENIED-IN-PART.

---

[1] Townsend Townsend and Crew LLP is now known as Kilpatrick Townsend and Stockton LLP. *See* Notice of Law Firm Name Change dated January 4, 2011. (Docket No. 12).

## I.  BACKGROUND

In the underlying action now pending in the Southern District of New York, Plaintiff Wi-LAN ("Wi-LAN") asserts claims for fraudulent inducement and infringement of U.S. Patent No. 5,828,402 (the "asserted patent").  Wi-LAN was assigned the asserted patent by Tri-Vision Electronics, Inc.  ("Tri-Vision").  Wi-LAN's patent claims involve V-Chip technology that enables parents to block television programming based on program content.

Tri-Vision and LG previously engaged in negotiations for LG to license the technology covered by the asserted patent.  During the course of the parties' negotiations, Wi-LAN alleges that LG induced Tri-Vision to reduce the royalty rate it initially offered to LG.  Wi-LAN further alleges that LG represented to Tri-Vision that a reduced royalty rate was nevertheless in Tri-Vision's interest because it would subject a larger volume of LG products to the royalty.  Wi-LAN finally alleges that based on the above representations, Tri-Vision executed a licensing agreement with LG for the technology covered by the  asserted patent that included a reduced royalty rate.  The licensing agreement was effective on May 17, 2006.  (the "May 17, 2006 Licensing Agreement").  As a result of the reduced rate, "most-favored-nations" clauses were triggered in Tri-Vision's other license agreements and cause Tri-Vision to realize reduced royalty payments from all of its existing licensees.

LG reported no royalties for almost two years.  Wi-LAN then met with LG to discuss the terms of the May 17, 2006 Licensing Agreement and the lack of any royalties whatsoever.  LG disputed that it had ever represented to Tri-Vision that an increase in volume of royalty-bearing products would more than compensate for the reduced royalty rate.  LG further explained that there were no royalties to report because LG had implemented a fixed V-Chip rating system rather than the flexible V-Chip rating system covered by the asserted patent.  From November 2008 to November 2009, Wi-LAN alleges that LG refused to undertake any further discussions with itself or Tri-Vision.

On January 4, 2010, William R. Middleton ("Middleton"), Wi-LAN's Senior Vice President of Licensing and General Counsel, sent an email to LG that included as an attachment an opinion letter authored by Townsend and dated December 21, 2009.  (the "Townsend

Letter"). Townsend was, and is, Wi-LAN's outside counsel in the underlying dispute. The January 4, 2010 email states in pertinent part:

> However, as a means to further assist your understanding of the relevant issues and to circumvent yet another protracted exchange of views between our two companies on these matters, I am now attaching a copy of a recent legal opinion from our USA counsel, Townsend and Townsend and Crew LLP which directly addresses the infringement and fraudulent inducement issues that LGE has once again raised.[2]

Neither the email nor the Townsend Letter forwarded to LG contained any qualifications limiting the scope of its use. The Townsend Letter contains the firm's letterhead and is marked "Confidential." It is addressed only to Mr. Middleton and contains an analysis of the asserted patent, its specification, prosecution history and prior art. The Townsend Letter specifically discusses whether LG's DTV receivers infringe the asserted patent. Despite its receipt of the email and the Townsend Letter, LG still refused to meet further with Wi-LAN. Two weeks later, Wi-LAN filed the underlying action.

For nearly ten months after the action commenced, LG never sought any discovery related to the Townsend Letter. Forty-five days before the close of discovery, LG served Townsend with the subpoena that is the subject of the pending motion. Wi-LAN states that it has never used the Townsend Letter to support its prosecution of the underlying action.

## II. LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties by subpoena. The "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."[3] "Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b)."[4] "Rule 26(b), in turn, permits the discovery of an non-privileged material 'relevant to the claim or defense of any party,' where 'relevant information need not be admissible at trial if the discovery appears

---

[2]   12/22/10 Declaration of David Perez, ¶ 1, Exh. A. (Docket No. 10).

[3]   Advisory Committee Notes to the 1970 Amendment.

[4]   *See Gonzales v. Google, Inc.,* 234 F.R.D. 674, 679 (N.D. Cal. 2006).

1  reasonably calculated to lead to the discovery of admissible evidence."[5]  For purposes of

2  discovery, relevancy is defined broadly.[6]

3      Rule 45 also states that the court must quash or modify a subpoena that requires

4  disclosure of privileged or other protected matter if no exception or waiver applies.[7]

5      The attorney-client privilege protects from disclosure confidential communications

6  between a client and an attorney.[8]  "[It] is intended 'to encourage clients to make full disclosure

7  to their attorneys,' recognizing that sound advice 'depends upon the lawyer's being fully

8  informed by the client."[9]  The attorney-client privilege is strictly construed.[10]  A party waives the

9  attorney-client privilege by tendering voluntarily the contents of a confidential communication

10  and such waiver  may include all other communications on the same subject.[11]  The party

11  asserting the attorney-client privilege bears the burden of showing that it applies.[12]  Also, it must

12  prove that privilege has not been waived.[13]

13      "An express waiver occurs when a party discloses privileged information to a third party

14  who is not bound by the privilege, or otherwise shows disregard for the privilege by making the

15  information public."[14]  "Disclosures that effect an express waiver are typically within the full

16  control of the party holding the privilege; courts have no role in encouraging or forcing the

17

18

---

19  [5]  *See id.*

20  [6]  *See id.* at 680.

21  [7]  Fed. R. Civ. P. 45(c)(3).

22  [8]  *Hernandez v. Tanninen,* 604 F.3d 1095, 1100 (9th Cir. 2010).

23  [9]  *See id.*

24  [10]  *Weil, et al. v. Investment/Indicators, Research and Mgmt, Inc.,* 647 F.2d 18, 24 (9th Cir. 1981).

25  [11]  *See id.*

26  [12]  *See id.* at 25.

27  [13]  *See id.*

28  [14]  *Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir. 2003) (internal citations omitted).

disclosure - they merely recognize the waiver after it has occurred."[15]

"There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."[16]  The doctrine of waiver is rooted in notions of fundamental fairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."[17]

"The work-product doctrine is a 'qualified privilege' that protects 'certain materials prepared by an attorney acting for his client in anticipation of litigation."[18]  The purpose of the work-product doctrine is to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."[19]

### III.  DISCUSSION

At the hearing, Townsend conceded that inasmuch as Wi-LAN had advertently produced the Townsend Letter, it had waived any claim of privilege to the document itself.  What Townsend does not concede, however, is that production of the Townsend Letter constitutes a waiver of the protections otherwise afforded to its privileged communications and work-product concerning the subjects discussed in the Townsend Letter.

**A.     Disclosure of the Townsend Letter Was Not Made in a Federal Proceeding, and Therefore Rule 502 Does Not Apply**

"The attorney-client privilege belongs to the client, who alone may waive it."[20]  Here, there is not dispute that at the time of the disclosure Middleton was a client capable of waiving

---

[15]   *Id.*

[16]   *See Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.,* 254 F.R.D. 568, 575 (N.D. Cal. 2008).

[17]   *Tennenbaum v. Deloitte and Touche,* 77 F.3d 337, 340 (9th Cir. 1996).

[18]   *See id.*

[19]   *See United States v. Nobles,* 422 U.S. 225, 238 (1975).

[20]   *In re Seagate Tech. LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007).

whatever privilege attached to the Townsend Letter when he sent it to LG.   Townsend

nevertheless argues against a finding of waiver by citing to Fed. R. Evid. 502(a), which provides

that:

> [w]hen the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.[21]

Focusing on Rule 502(a)'s third "fairness" requirement, Townsend argues that Wi-LAN's pledge

not to use the Townsend Letter in support of its claims should limit waiver of both the attorney-

client privilege and the work-product doctrine to the document actually disclosed by

Middleton.[22]   Emphasizing the fact that Middleton disclosed the Townsend Letter before this

suit was filed, LG disputes that Rule 502 even applies here in light of the plain language of the

Rule limiting it to disclosures "made in a Federal proceeding."  LG also notes that any reliance

on the *Eden Isle Marina* decision is misplaced because the court there acknowledged that it was

presuming certain disclosures were "made in a Federal proceeding" even though the majority of

the disclosures were made <u>before</u> the underlying action was filed.

The court agrees with LG that Rule 502(a) does not apply to these circumstances.

Whatever the basis for presuming otherwise in *Eden Isle Marina*, here Middleton's disclosure of

the Townsend Letter to LG undeniably occurred <u>before</u>, not <u>in</u>, a "Federal Proceeding."  The

plain language of Rule 502 therefore confirms that the Rule simply does not apply, and

Townsend identifies no basis for substituting a policy preference for Congress' clear directive.[23]

---

[21]   Rule 502 was enacted on September 19, 2008.  *See* Pub. L. No. 110-322, § 1(a), 122 Stat. 3537, 3537-38.

[22]   *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 502 n.20 (Fed. Cl. 2009); *see also Multiquip, Inc. v. Water Mgmt. Sys., LLC*, No. CV 08-403-S-EJL-REB, 2009 WL 4261214, at *3 n.3 (D. Idaho Nov. 23, 1999).

[23]   In fact, subsection(f) of Rule 502 emphasizes that the Rule applies only to disclosures made in, but not before, a "proceeding": "[n]otwithstanding Rules 101 and 1101, this rule applies to State proceedings and to Federal court-annexed and Federal court-mandated arbitration proceedings, in the circumstances set out in the rule."

1   **B.      Wi-LAN'S Disclosure of the Townsend Letter Constitutes Subject Matter Waiver**

2           Townsend next argues that even if Rule 502 does not apply, it remains unfair to find that

3   Middleton's waiver of the attorney-client privilege extend to all communications and work

4   product concerning the same subject matter.  Townsend again points to the fact that Wi-LAN has

5   never placed the advice of Townsend at issue in the underlying litigation and thus has never

6   sought to use the Townsend Letter as both a "sword and a shield."  Townsend argues that LG has

7   therefore suffered no unfair prejudice and waiver should be limited to only the Townsend Letter.

8           LG responds that under binding Ninth Circuit and Federal Circuit case law, Wi-LAN's

9   litigation intentions regarding the object of the waiver is irrelevant.  What is relevant, according

10  to LG, is simply whether the waiver was voluntary.

11          Once again, the court agrees with LG.  "It has been widely held that voluntary disclosure

12  of the content of a privileged attorney communication constitutes waiver of the privilege as to all

13  other such communications on the same subject."[24]  Put another way, "[t]he widely applied

14  standard for determining the scope of a waiver of attorney-client privilege is that the waiver

15  applies to all other communications relating to the same subject matter."[25] Because Middleton

16  voluntarily produced the Townsend Letter to LG, the disclosure constituted a subject matter

17  waiver.  Indeed, at the hearing, Townsend's own counsel speculated that the author of the

18  Townsend Letter provided it to Middleton knowing he intended to provide it to LG to support

19  Wi-LAN's position during licensing negotiations.[26]  Under these circumstances, both the Ninth

20  Circuit and Federal Circuit reject the notion that waiver should be limited to the Townsend

21  Letter only.[27]  Townsend's motion to quash the subpoena seeking all communications and work

22

23          [24]  *Weil,* 647 F.2d at 24.

24          [25]  *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed. Cir. 2005).

25          [26]  1/18/2011 FTR 10:31:42-52.

26          [27]  *See Hernandez,* 604 F.3d at 100 ("Disclosing a privileged communication or raising a
claim that requires disclosure of a protected communication results in waiver as to all
27  communications on the same subject.").  *Cf. Genentech, Inc. v. U.S. Int'l Trade Comm.,* 122 F.3d
1409, 1417 (Fed. Cir. 1997) (holding that Genentech did not provide compelling arguments to
28  limit waiver where privileged documents had been produced as a result of inadequate screening
procedures).

1   product related to the subject matter covered by the Townsend Letter is therefore DENIED.

2   **C.   LG Has Not Shown Compelling Need for Opinion Work-Product**

3            Townsend finally argues that at the very least, Middleton's waiver cannot extend to its

4   opinion work product.  In particular, Townsend contends that the "[court] must protect against

5   disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's

6   attorney or other representative concerning the litigation."[28]  Townsend further contends that

7   "Rule 26 accords special protection to work product revealing the attorney's mental processes."[29]

8            LG responds that the mental impressions of the Townsend attorneys are at issue in light

9   of the counterclaims, including patent misuse, unclean hands, estoppel, enforceability, unfair

10  competition, and antitrust, it has asserted in the underlying action.  Specifically, LG contends

11  that its counterclaims implicate what it describes as "Wi-LAN's and Townsend's role in bringing

12  baseless patent infringement lawsuits, negotiating with potential licensees in bad faith, and

13  covertly engaging an ostensibly independent consultant to lobby the FCC."

14           The Ninth Circuit requires that a party seeking opinion work product show that "the need

15  for the material is compelling."[30]  Other federal courts considering the extension of a subject-

16  matter waiver to opinion work product have consistently rejected the notion,[31] especially where

17  the advice of counsel has not been asserted as a defense to a claim.[32]  Although LG has asserted

18  that its stock counterclaims may implicate issues involving Townsend's mental impressions, it

19  has not shown a compelling need for the materials to prepare its case and that it has been unable

20  to obtain the substantial equivalent of materials by other means.  Therefore, Townsend's motion

21  to quash the subpoena seeking its opinion work-product is GRANTED.

---

22

23    [28]   *See* Fed. R. Civ. P. 26(b)(3)(B).

24    [29]   *Upjohn Co. V. United States*, 449 U.S. 383, 400 (1981).

25    [30]   *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1991).

26    [31]   *See, e.g., Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 422 (11th
      Cir. 1994) ("[T]he subject-matter waiver doctrine does not extend to materials protected by the
27    opinion work product privilege."); *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir.
      1988) ("[W]hen there is subject matter waiver, it should not extend to opinion work product.").

28    [32]   *See, e.g., Chick-Fil-A v. ExxonMobil Corp.,* No. 08-61422, 2009 WL 3763032 *7, *9
      (S.D. Fla. Nov. 10, 2009).

1

**IV.  CONCLUSION**

2          No later than February 28, 2011, and except as provided above, Townsend shall produce

3    documents responsive to LG's subpoena and appear for deposition.

4          IT IS SO ORDERED.

5    Dated:     February 8, 2011

6

7    _____

8    PAUL S. GREWAL
     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28