# United States Court of Appeals for the Federal Circuit

2011-1626

WI-LAN, INC.,

Plaintiff,

and

KILPATRICK TOWNSEND & STOCKTON LLP
(formerly known as Townsend and Townsend and Crew LLP),

Sanctioned Party-Appellant,

v.

LG ELECTRONICS, INC. and
LG ELECTRONICS USA, INC.,

Defendants-Appellees.



FILED
AUG 2 7 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## JUDGMENT

ON APPEAL from the    UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CASE NO.:    10-MC-80254  JF

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**VACATED AND REMANDED.**

ENTERED BY ORDER OF THE COURT

DATED   JUL 1 3 2012

Jan Horbaly /CWC

Jan Horbaly, Clerk

**ISSUED AS A MANDATE:**  AUG 2 0 2012

# United States Court of Appeals for the Federal Circuit

---

**WI-LAN, INC.,**
*Plaintiff,*

and

**KILPATRICK TOWNSEND & STOCKTON LLP
(FORMERLY KNOWN AS TOWNSEND AND
TOWNSEND AND CREW LLP),**
*Sanctioned Party-Appellant,*

v.

**LG ELECTRONICS, INC. AND
LG ELECTRONICS USA, INC.,**
*Defendants-Appellees.*

---

2011-1626

---

Appeal from the United States District Court for the Northern District of California in case no. 10-MC-80254, Judge Jeremy Fogel.

---

Decided: July 13, 2012

---

DAVID E. SIPIORA, Kilpatrick Townsend & Stockton LLP, of Denver, Colorado, argued for sanctioned party-appellant. With him on the brief were MATTHEW C. HOLOHAN; and RICHARD S. MEYER, of Washington, DC;

and ADAM H. CHARNES and RICHARD D. DIETZ, of Winston-Salem, North Carolina.

JAMES J. LUKAS, JR, Greenberg Traurig LLP, of Chicago, Illinois, argued for defendant-appellee. With him on the brief were RICHARD D. HARRIS and MATTHEW J. LEVINSTEIN.

---

Before MOORE, CLEVENGER, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CLEVENGER.
Opinion <u>dubitante</u> filed by *Circuit Judge* REYNA.

CLEVENGER, *Circuit Judge.*

The law firm of Kilpatrick Townsend & Stockton LLP ("Kilpatrick Townsend") appeals contempt sanctions entered in connection with a subpoena served on it in the Northern District of California. *Wi-LAN, Inc. v. LG Elecs., Inc.*, No. 10-mc-80254 [hereinafter *Wi-LAN*], 2011 WL 3648531 (N.D. Cal. Aug. 18, 2011). Kilpatrick Townsend acknowledges that it did not comply with the court's order to produce certain communications between Kilpatrick Townsend and its client, Wi-LAN, Inc. ("Wi-LAN"). Kilpatrick Townsend contends that the order to produce these communications was based on legal error by the district court and failed to properly apply Wi-LAN's attorney-client privilege against production. Kilpatrick Townsend urges that its failure to comply was its only ethical course of action.

Because the district court did not apply the proper analysis to the privilege question, we vacate its production order and remand. We also vacate the contempt sanctions; on remand the district court may revisit whether Kilpatrick Townsend's failure to comply was contempt.

I

This case arises from a patent dispute between Wi-LAN and accused infringers LG Electronics, Inc. and LG Electronics USA, Inc. (collectively, "LG"). Wi-LAN holds certain patent rights that it claims read on the "V-chip" technology for ratings-based blocking of television programs.

In 2006, LG took a license from Wi-LAN's predecessor-in-interest. LG subsequently took the position that it owed no royalties on the license because its televisions did not practice Wi-LAN's technology. Wi-LAN disagreed.

In January of 2010, Wi-LAN forwarded to LG a letter written by outside counsel Daniel Furniss of the law firm Townsend and Townsend and Crew LLP ("Townsend"), referred to herein as "the Townsend letter." The letter bore a date of December 21, 2009. It named William Middleton, Wi-LAN's general counsel and senior vice president, as addressee. It was marked "CONFIDENTIAL" on every page. And it contained detailed analysis of Wi-LAN's patent rights as applied to LG's technology, ultimately opining that LG was practicing Wi-LAN's technology and so owed royalties on the license. There is no dispute that Wi-LAN's disclosure of the letter to LG was intentional. Apparently, Wi-LAN hoped that the letter's reasoning would convince LG to revise its position and begin paying royalties.

The letter did not convince LG. On January 19, 2010, Wi-LAN sued for patent infringement in the Southern District of New York. It identified Townsend as litigation counsel on its complaint.

Once fact discovery was underway, LG served a subpoena on Townsend's offices in Palo Alto, California, for documents and testimony relating to the subject matter of

the Townsend letter. LG's view, which it maintains in this appeal, was that any privilege Wi-LAN might have had over that material was absolutely waived by its voluntary disclosure of the Townsend letter.

Townsend had then changed its name to Kilpatrick Townsend, and it disagreed. It moved the district court for the Northern District of California to quash the subpoena. Kilpatrick Townsend argued that the Townsend letter was disclosed during settlement negotiations and that Wi-LAN had expressly disclaimed use of the letter for any purpose in the New York litigation. In those circumstances, Kilpatrick Townsend contended that in fairness, any waiver of the attorney-client privilege should be limited to the Townsend letter itself. Kilpatrick Townsend also pointed to Federal Rule of Evidence 502(a), which restricts the scope of an express waiver of the attorney-client privilege "in a Federal or State proceeding" to the matter disclosed unless fairness requires more extensive disclosure. Kilpatrick Townsend argued that Rule 502(a) should apply "in the context" of a federal proceeding, and that the Townsend letter should be seen as having been disclosed in such a context. Mot. Quash, *Wi-LAN* (N.D. Cal. Oct. 26, 2010), Dkt. #1, J.A. 102. The magistrate judge rejected Kilpatrick Townsend's arguments. Mag. Order, *Wi-LAN*, 2011 WL 500072, at *3–4 (N.D. Cal. Feb. 8, 2011).

Kilpatrick Townsend unsuccessfully asked the district court for relief from the magistrate's order, again arguing that any waiver should be limited to the Townsend letter and that "[f]airness does not compel a subject-matter waiver." Mot. for Relief, *Wi-LAN*, at 5 (N.D. Cal. Feb. 22, 2011), Dkt. #24, J.A. 264, 268; *see also Wi-LAN*, 2011 WL 841271 (N.D. Cal. Mar. 8, 2011) (denying motion). Kilpatrick Townsend remained intransigent. It took the position that, privilege notwithstanding, LG's subpoena

was drawn so narrowly as to reach only a small universe of material. This position was rejected both by the magistrate and the district court.

Kilpatrick Townsend next filed a defective motion for certification of an interlocutory appeal, which the magistrate judge rejected on jurisdictional grounds. *See Wi-LAN*, 2011 WL 3648531, at *2 & n.5 (N.D. Cal. Aug. 18, 2011) (discussing denial of this motion).

At this point it had been several months since service of the subpoena, and Kilpatrick Townsend had yet to fully comply with the district court's discovery orders. The magistrate judge ordered Kilpatrick Townsend to appear before the district court and show cause why it should not be held in contempt. The district court considered the case, found Kilpatrick Townsend in contempt, and entered sanctions in the amount of LG's costs and fees. *Id.* at *3.

Kilpatrick Townsend timely appealed. This court has jurisdiction to review a district court's contempt order in an ancillary proceeding to a patent infringement case. 28 U.S.C. § 1295(a)(1); *Micro Motion Inc. v. Exac Corp.*, 876 F.2d 1574, 1577–78 (Fed. Cir. 1989).

## II

The applicability of attorney-client privilege in a case such as this, in which subject matter jurisdiction extends from the underlying presence of a federal patent law question, is determined by federal common law. Fed. R. Evid. 501. In an appeal from a district court's handling of a subpoena, where the issues concerned are not unique to patent law, this court applies the law of the regional circuit of the court under whose authority the subpoena was issued. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209 (Fed. Cir. 1987). For this appeal,

then, we must look to Ninth Circuit law in reviewing the district court's rulings.

The Ninth Circuit reviews trial court rulings as to the scope of attorney-client privilege *de novo*. *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). It reviews contempt proceedings and the grant or denial of motions to quash for abuse of discretion. *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 780 (9th Cir. 1989); *In re Grand Jury Proceedings*, 33 F.3d 1060, 1061 (9th Cir. 1994). To the extent the Ninth Circuit has not spoken definitively on any legal issue raised by this appeal, we must predict how it would decide such a question. *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1026 (Fed. Cir. 1986).

### III

This appeal requires us to assess the consequences of Wi-LAN's disclosure of the Townsend letter to its rival LG. We have no difficulty concluding that this disclosure implicated Wi-LAN's attorney-client privilege. Though Kilpatrick Townsend suggests that the Townsend letter was always intended to be disclosed, and so was never really confidential (and so never really privileged), the available evidence demonstrates otherwise. The Townsend letter is marked "CONFIDENTIAL" on every page. It is addressed from an attorney to his client and contains detailed legal opinions. Kilpatrick Townsend has not offered evidence (as opposed to attorney argument) to justify departing from the obvious conclusion that the letter was at least initially confidential. We therefore agree with the district court that Wi-LAN's disclosure of the letter waived both that confidentiality and Wi-LAN's attorney-client privilege, at least as to the letter itself.

The question presented by this appeal thus concerns not whether Wi-LAN waived its privilege, but how far the

Case 5:10-mc-80254-RMW   Document 94   Filed 08/27/12   Page 8 of 20

7                                           WI-LAN v. LG ELECTRONICS

waiver extended. Kilpatrick Townsend argues that under a fairness balancing test the scope of waiver should be narrow, essentially limited to the Townsend letter itself and reaching no other communication between Wi-LAN and Kilpatrick Townsend. LG, on the other hand, believes the waiver should be broad, exposing to discovery a wide swath of attorney-client communications, both pre- and post-dating the Townsend letter, relating to the subject matter addressed therein. Kilpatrick Townsend does not argue here, as it did below, that Federal Rule of Evidence 502 should govern the scope of waiver here, on the theory that disclosures "in the context of" a federal proceeding qualify for the benefit of the rule.

It is well-established that when a client discloses to another person the content of a privileged attorney communication, the resulting privilege waiver may extend beyond the communication itself to other related matter. *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24–25 (9th Cir. 1981). LG suggests that this is both the beginning and the end of the inquiry. It says Wi-LAN waived privilege as to the Townsend letter, so it *ipso facto* waived privilege as to all other communications on the same subject matter. Kilpatrick Townsend, on the other hand, argues that basic considerations of fairness preclude a broad waiver in this case. It claims that LG is unable to articulate any prejudice it would suffer by assertion of privilege to matters beyond the four corners of the letter, and so there is no equitable reason to extend the waiver beyond the letter. Kilpatrick Townsend argues that by rejecting its attempt to incorporate such a fairness inquiry into assessing the scope of waiver, the district court legally erred.

Kilpatrick Townsend's plea for fairness balancing in this appeal resonates with certain trends in federal privilege law. The parties do not dispute that modern law

requires fairness balancing for certain varieties of privilege waiver.

The most prominent such requirement derives, as already mentioned, from Federal Rule of Evidence 502(a). Enacted in 2008, the rule limited the effect of waiver by strongly endorsing fairness balancing. *See* Fed. R. Evid. 502(a)(1) (extending waiver to undisclosed materials only where the disclosed and undisclosed matter "ought in fairness to be considered together"); *see also* Edward J. Imwinkelried, *The New Wigmore* § 6.12.7 & nn.579–86 (2010 ed.) (discussing Rule 502 and noting that, prior to its adoption, "the prevailing view extended the waiver farther").

Although we have no occasion to decide if Rule 502(a) governs the scope of waiver resulting from the pre-litigation disclosure in this case, the rule illuminates the policy question presented by this appeal. If a party who expressly waives privilege during litigation receives the protection of a fairness balancing test, as per Rule 502(a), should the same protection be made available to a person whose waiver occurred pre-litigation? The parties to this appeal present opposing positions. Kilpatrick Townsend argues that fairness balancing should *always* be available to one who expressly waives privilege pre-litigation. LG, on the other hand, argues that fairness balancing must *never* be available in those circumstances. According to LG, an extrajudicial waiver of the attorney-client privilege must always extend beyond the precise matter disclosed, regardless of the circumstances in which the waiver occurs and even when the waiver inures in no benefit whatsoever to the party waiving the privilege.

The parties do agree that the Ninth Circuit has not spoken squarely on this issue, i.e., whether fairness balancing is either required or proscribed in this case.

Our task is to analyze the Ninth Circuit's law and determine what that court would hold, were the question presented to it. *Heat & Control*, 785 F.2d at 1026. We conclude that the Ninth Circuit would find fairness balancing to be required. That court has favorably recognized the strong precedent of fairness balancing in the last twenty-five years. Equally importantly, we find nothing in the Ninth Circuit's law to demonstrate that it has adopted a rule simultaneously requiring district courts to apply fairness balancing to privilege waivers made during litigation, but blocking them from applying it to extrajudicial waivers.

In order to understand the law of the Ninth Circuit, it is necessary to begin with a case that the Ninth Circuit has several times cited with approval, though never adopted in its entirety. It is the Second Circuit case *Auersperg ex rel. von Bulow v. von Bulow* (*In re von Bulow*), 828 F.2d 94 (2d Cir. 1987). The facts were as follows. After Claus von Bulow was acquitted of assault, his attorney Alan Dershowitz wrote the well-known book *Reversal of Fortune*. With Mr. von Bulow's permission, the book recounted portions of conversations the two men had in connection with the criminal proceedings. In subsequent civil litigation there was an attempt to discover the undisclosed portions of each conversation, on the theory that any privilege had been waived. The Second Circuit declined to extend such a waiver, holding that Mr. von Bulow's express waiver of his privilege (i.e., his consent to publication of the book) had not prejudiced his opponent, and that there was therefore "no reason in logic or equity to broaden the waiver beyond those matters actually revealed." *von Bulow*, 828 F.2d at 103.

LG acknowledges *von Bulow* but contends that it should not control this case. First, it seeks to distinguish *von Bulow* as a case of implied waiver, not express

waiver. We disagree. The doctrine of implied waiver is invoked when a party makes the content of his attorney's advice relevant to some claim or defense in the case. Even if the party does not expressly disclose the advice received, but only alludes to it, the privilege can be deemed waived by implication. *See, e.g., Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."). In *von Bulow* it is clear that Mr. von Bulow had not attempted to make his attorney's advice part of any claim or defense. *von Bulow*, 828 F.2d at 103 (noting that the disclosures were made "extrajudicially and without prejudice to the opposing party"). He voluntarily consented to publication of the book—an express waiver of his attorney-client privilege. *Von Bulow* cannot be distinguished as a case of implied waiver.

Second, LG would have us interpret Ninth Circuit law to bar application of *von Bulow* to this appeal. We disagree. As discussed below, the Ninth Circuit has several times cited *von Bulow* with approval. And we find nothing in any of those cases to suggest that that court, though it approved of some aspects of *von Bulow*, nevertheless maintained a rule barring district courts from applying *von Bulow*'s central holding, fairness balancing, to cases of extrajudicial waiver.

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992), is illuminating. In that case, Pennzoil was charged with having waived its attorney-client privilege by two distinct acts, on theories of both express and implied waiver. The first act came before the litigation began: Pennzoil disclosed to an outside auditor legal memoranda addressing tax issues related, but subsidiary, to those in

the subsequent litigation. There was no dispute that Pennzoil had expressly waived privilege over these memoranda, and the district court limited the scope of the waiver just to the documents actually provided to the auditors. But Chevron contended on appeal that the resulting waiver was broader in scope, stripping Pennzoil's privilege over attorney communications not only specifically addressing the "subsidiary" tax issues of the memoranda, but also removing privilege over communications addressing broader, related tax issues. The Ninth Circuit rejected that argument, and affirmed the limited scope of waiver set by the district court. Citing *von Bulow*, it held:

> Pennzoil was not required, as a result of the limited disclosure, to provide Chevron with every document or communication that touched on the more general tax deferral question. *See In re von Bulow*, 828 F.2d 94, 102–03 (2d Cir. 1987) (disclosure of privileged communications did not waive privilege beyond "matters actually revealed").

*Chevron*, 974 F.2d at 1162. In other words, the Ninth Circuit adopted *von Bulow*'s fairness inquiry in analyzing express waiver, and affirmed the limited scope of the waiver resulting from the extrajudicial disclosure of the privileged matter.

*Chevron* went on to analyze implied waiver. As part of its defense at trial, Pennzoil had urged that certain statements in corporate filings were made on advice of counsel, and the statements should therefore be held reasonable, but it asserted privilege against Chevron's attempt to discover the details of this advice. Even though *Chevron* occurred before enactment of Rule of

Evidence 502(a)(1), the Ninth Circuit analyzed the scope of the waiver through a fairness lens. The Ninth Circuit thus held that Pennzoil could not use privilege "both as a sword and a shield." *Id.* It therefore ordered Pennzoil to produce those communications on which it was relying for this defense, and reversed the district court's holding to the contrary. *Id.* at 1163. Because this second aspect of *Chevron* concerns an implied waiver, in which a litigant deliberately injects the contents of his attorney's advice into litigation, it does not govern this appeal. Wi-LAN has not made the advice of its attorney the focus of any claim or defense. Its waiver was not implied but express. But in any event, *Chevron* reveals application by the Ninth Circuit of fairness considerations to both express extrajudicial and in-court implied waivers of the attorney-client privilege.

The Ninth Circuit again relied on *von Bulow* in *United States v. Mendelsohn*, 896 F.2d 1183 (9th Cir. 1990). Martin Mendelsohn was charged with conspiracy in connection with the interstate transportation of bookmaking paraphernalia. During the government's pre-indictment investigation, Mr. Mendelsohn told Detective Felix, an undercover policeman, that Mr. Mendelsohn's attorney had opined that sale of the paraphernalia was legal. Mr. Mendelsohn subsequently told the policeman that his attorney "did not know" what would happen if it was sold across state lines. As it happened, Mr. Mendelsohn's statements to the policeman were false: the attorney had told him sale across state lines was unlawful.

The district court held that Mr. Mendelsohn's extrajudicial statement to Detective Felix constituted a limited waiver of the attorney-client privilege. On appeal, Mr. Mendelsohn argued that there had been no waiver of the privilege at all because he did not truthfully disclose what his attorney had told him. The Ninth Circuit agreed with

the district court that a waiver had occurred, but noted that "[t]he district court was careful to confine the attorney's testimony to the subject of Mendelsohn's limited waiver." *Mendelsohn*, 896 F.2d at 1189. The Ninth Circuit saw *Mendelsohn* as different from the kind of case in which a court was asked to expand a limited extrajudicial waiver to a much larger field, and cited *von Bulow* as that kind of case. Describing *von Bulow* as an "extrajudicial disclosure of privileged communications" that did not "waive privilege beyond 'matters actually revealed,'" the Ninth Circuit emphasized that "[t]he district court did not err with regard to the waiver." *Id.*

LG would have us read *Mendelsohn* as a case strongly in its favor, as it can point to the language in the Ninth Circuit opinion that the waiver was limited to "the subject of Mendelsohn's limited waiver," and can argue that the waiver approved by the Ninth Circuit went beyond the words stated by Mr. Mendelsohn to Detective Felix to the general subject matter of the words stated. We think such a reading of *Mendelsohn* is strained, given the context in which the Ninth Circuit placed the appeal. The government was not asking the Ninth Circuit to extend the waiver beyond the matter actually disclosed, and the Ninth Circuit's opinion is careful to emphasize the narrowness of the waiver and to connect the facts of the case to the holding in *von Bulow*. The clearly better reading of the Ninth Circuit opinion is that it understood the district court to have correctly limited the extrajudicial waiver to the matter actually disclosed. Finally, nothing in the *Mendelsohn* opinion suggests that the Ninth Circuit in that case enforced the rule LG seeks here, that an extrajudicial waiver always extends beyond the matter actually disclosed.

The Ninth Circuit's most recent discussion of *von Bulow* is in the en banc case *Bittaker v. Woodford*, 331 F.3d

715 (9th Cir. 2003) (en banc). Lawrence Bittaker, a prisoner on California's death row, filed a habeas petition claiming ineffective assistance of counsel. The government argued that, by raising the issue and by expressly discussing certain aspects of the representation he received, Mr. Bittaker waived attorney-client privilege to such an extent that the government could not only learn the details of Mr. Bittaker's communications with his attorney, but could also disseminate them to outside agencies.

The Ninth Circuit acknowledged that there had been a waiver of privilege, but rejected the government's plea to distribute the information beyond the litigation. 331 F.3d at 721. It decided the case on implied waiver grounds. But, apparently in response to the government's arguments concerning express waiver, the court offered the following footnote:

> Although we do not decide this case under the express waiver doctrine, we note that the law in this area is not as settled as the state would have us believe. *See, e.g., Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 n.1, 611 (8th Cir. 1977) (holding that voluntary disclosure of information to the SEC resulted only in a limited waiver and that the information remained privileged in subsequent private litigation); *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("[W]here . . . disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed."); Christopher B. Mueller & Laird C.

> Kirkpatrick, *Evidence: Practice Under the Rules* § 5:28, at 541 (2d ed. 1999) (noting that "[t]he trend of modern cases" is toward finding only limited waivers).

*Id.* at 720 n.5 (alterations 9th Cir.'s, citations edited).

LG points out, rightly, that this footnote is dictum. But in light of our duty to predict how the Ninth Circuit would resolve this appeal, it is persuasive dictum. It indicates that the logical path we have laid out herein, the path leading through *von Bulow*'s fairness inquiry, is headed in the right direction.

In deciding whether Ninth Circuit law bars or mandates fairness considerations when determining the scope of an express extrajudicial waiver of the attorney-client privilege, we note that the Ninth Circuit is not averse to looking to other circuits for guidance on new issues of law. *Am. Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) ("[A]lthough we are by no means compelled to follow the decisions of other circuits, there is virtue in uniformity of federal law as construed by the federal circuits.") (internal quote marks omitted). We thus think the Ninth Circuit would appreciate the heavy weight of current authority that comes down on the side of employing fairness considerations to decide the scope of waivers. *E.g., United States v. XYZ Corp. (In re Keeper of the Records)*, 348 F.3d 16, 24 (1st Cir. 2003); *von Bulow*, 828 F.2d at 103; *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 256 (6th Cir. 1996); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417–18 (11th Cir. 1994), *modified*, 30 F.3d 1347 (11th Cir. 1994); *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989); *see also* Paul R. Rice, 2 *Attorney-Client Privilege in the United States* § 9:81 & n.2 (2011 ed.) (citing fairness as the driving

consideration in assessing scope of waiver); Imwinkelried, *supra*, § 6.12.7 n.613 (with accompanying text) (arguing that fairness considerations would mitigate for limited waiver in extrajudicial disclosure situations). We think the Ninth Circuit would align itself with the substantial weight of authority.

As between the two directions put forward by the parties—one requiring fairness balancing for extrajudicial discloses, the other barring it—we conclude that the Ninth Circuit's cases support the former far better than the latter. The Ninth Circuit has repeatedly endorsed fairness balancing in a variety of circumstances; more to the point it has never set forth, either expressly or inherently, any rule barring fairness's application to extrajudicial disclosures. Nor do the Ninth Circuit's cases suggest any policy reason why the fairness protections available for express disclosures in litigation should be unavailable to those who waive privilege pre-litigation. Such a rule, which LG promotes in this appeal, seems to us bad policy, and we decline to adopt it on the Ninth Circuit's behalf.

For the foregoing reasons, we conclude that the district court erred by rejecting considerations of fairness—i.e., whether LG would be unfairly prejudiced by Wi-LAN's assertion of privilege against discovery into attorney-client communications beyond the four corners of the Townsend letter—when assessing the scope of waiver here. None of the orders considering scope of waiver in this case applied such a test. However, we decline the parties' invitation to evaluate fairness ourselves in the first instance. We therefore vacate the magistrate and district court's orders concerning the scope of Wi-LAN's waiver and remand for further proceedings.

We also vacate the district court's entry of contempt sanctions against Kilpatrick Townsend but note the

district court's discretion to revisit the issue on remand. As a general matter the Ninth Circuit defers to a trial court's finding of contempt. *Cal. Pub. Utils. Comm'n*, 892 F.2d at 780. Even in this appeal, where we agree with Kilpatrick Townsend that the district court committed legal error in its application of privilege doctrine, that is not the same as excusing failure to comply with a judicial order. In some cases one who disputes a subpoena's lawful scope has no alternative but to invite a contempt citation in order to obtain appellate review. Here, however, Kilpatrick Townsend had options that it did not pursue. Nevertheless, it is not for this court to determine whether and to what extent Kilpatrick Townsend should pay a penalty for its failure to either properly move the district court for certification of an interlocutory appeal or to seek mandamus review from this court when faced with an unlawful production order.

VACATED AND REMANDED

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

WI-LAN, INC.,
*Plaintiff,*

and

KILPATRICK TOWNSEND & STOCKTON LLP
(FORMERLY KNOWN AS TOWNSEND AND
TOWNSEND AND CREW LLP),
*Sanctioned Party-Appellant,*

v.

LG ELECTRONICS, INC. AND
LG ELECTRONICS USA, INC.,
*Defendants-Appellees.*

---

2011-1626

---

Appeal from the United States District Court for the Northern District of California in case no. 10-MC-80254, Judge Jeremy Fogel.

---

Before MOORE, CLEVENGER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge,* dubitante.

    The majority embarks on a winding course as it explores Ninth and other regional circuit case law, and evidentiary rules. At the start of its journey, the majority

recognizes, "The parties do agree that the Ninth Circuit has not spoken squarely on this issue, i.e., whether fairness balancing is either required or proscribed in this case." Maj. Op. at 8.

Still, the majority discerns a trend in the law and on that basis takes a guess that the Ninth Circuit, if its hand were at the helm, would hold that there must be a fairness balancing in the context of express extrajudicial waivers.[1]

I examine the trend and find in it no gates that lead to secure blue water. Indeed, I find that even a route that lies opposite the route charted by the majority is as good a route as any.

Thus, while instinct tells me the majority could be correct, I am concerned that our heading is not based on an accurate bearing. As I cannot prove or disprove our result, I go along with the majority—but with doubt.

---

[1] See Maj. Op. at 8-9. Citing numerous cases from other circuits, the majority opines that "the Ninth Circuit would appreciate the heavy weight of current authority that comes down on the side of employing fairness considerations to decide the scope of waivers." Id. at 15-16.