UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WI-LAN, INC.,<br><br>                Plaintiff,<br>    v.<br><br>LG ELECTRONICS, INC., et al.,<br><br>                Defendants. | Case No.: C 10-80254 JF (PSG)<br><br>**ORDER GRANTING THIRD PARTY'S MOTION TO QUASH AND DENYING DEFENDANT'S MOTION FOR SANCTIONS**<br><br>**(Re: Docket Nos. 98, 99)** |

In this patent infringement suit, third-party Kilpatrick Townsend & Stockton LLP ("Townsend") renews its motion to quash following remand by the U.S. Court of Appeals for the Federal Circuit. Defendants LG Electronics, Inc. and LG Electronics USA, Inc. (collectively, "LG") oppose the motion and move for sanctions. The parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, Townsend's motion is GRANTED and LG's motion for sanctions is DENIED.

### I.    BACKGROUND

A detailed recitation of the facts was provided in the order dated February 8, 2011.[1] Only an abbreviated version of those facts necessary to consider the instant motion is provided here.

---

[1] *See* Docket No. 22.

In the underlying action previously pending in the Southern District of New York, Plaintiff Wi-LAN, Inc. ("Wi-LAN") asserted claims for fraudulent inducement and infringement of U.S. Patent No. 5,828,402 (the "asserted patent").[2] Wi-LAN was assigned the asserted patent by Tri-Vision Electronics, Inc. ("Tri-Vision"). Wi-LAN's patent claims "V-Chip" technology that enables parents to block television programming based on program content.

On January 4, 2010, William R. Middleton ("Middleton"), Wi-LAN's Senior Vice President of Licensing and General Counsel, sent an email to LG that included as an attachment an opinion letter authored by Townsend and dated December 21, 2009 (the "Townsend Letter"). Townsend was, and is, Wi-LAN's outside counsel in the underlying action. The January 4, 2010 email states in pertinent part:

> However, as a means to further assist your understanding of the relevant
> issues and to circumvent yet another protracted exchange of views between
> our two companies on these matters, I am now attaching a copy of a recent
> legal opinion from our USA counsel, Townsend and Townsend and Crew, LLP
> which directly addresses the infringement and fraudulent inducement issues
> that LGE has once again raised.

Neither the email nor the Townsend Letter forwarded to LG contained any qualifications limiting the scope of its use. The Townsend Letter contains the firm's letterhead and is marked "Confidential." It is addressed only to Middleton and contains an analysis of the asserted patent, its specification, prosecution history, and prior art. Despite its receipt of the email and the Townsend Letter, LG still refused to meet further with Wi-LAN. Two weeks later, Wi-LAN filed the underlying action.

For nearly ten months after the action commenced, LG never sought any discovery related to the Townsend Letter. Forty-five days before the close of discovery, LG served Townsend with a subpoena that is the subject of the pending motion. Wi-LAN states that it never used and never will use the Townsend Letter to support its prosecution of the underlying action.

---

[2] According to LG, the district court in the underlying action granted LG's motion for summary judgment motion of non-infringement of the '402 Patent. *See* Docket No. 98 at 2-3. The court concluded that LG's accused products do not infringe the '402 Patent because LG's accused devices have advance knowledge only of the ratings system currently in use in the United States. *See id.* Wi-LAN's appeal to the Federal Circuit is pending. *See id.*

Townsend moved to quash LG's subpoena. Applying Ninth Circuit law, the court found that the intentional disclosure by Wi-LAN of the Townsend letter to LG constituted subject matter waiver extending to all communications and work product concerning the same subject matter.[3] The court declined, however, to extend the waiver to opinion work product.[4]

Townsend moved for relief from the non-dispositive pretrial order of the undersigned magistrate judge, which Judge Fogel denied.[5] Townsend nevertheless refused to produce responsive documents as ordered.

Based on Townsend's refusal to comply with a court order, LG moved for an order to show cause why Townsend should not be held in contempt and sanctioned for failure to comply with the February 8, 2011 order. On April 7, 2011, the court granted LG's motion.[6] Townsend again moved for relief from the non-dispositive pretrial order of the undersigned magistrate judge, which Judge Fogel again denied.[7]

On August 18, 2011, Judge Fogel found Townsend in contempt of the February 8, 2011 and April 7, 2011 orders.[8]

On July 13, 2012, after an exhaustive review of the Ninth Circuit's precedent on the subject, the Federal Circuit vacated Judge Fogel's entry of contempt and remanded the matter for "considerations of fairness – i.e., whether LG would be unfairly prejudiced by Wi-LAN's assertion of privilege against discovery into attorney-client communications beyond the four corners of the Townsend letter – when assessing the scope of the waiver here."[9] The Federal Circuit further noted that on remand the trial court could consider whether Townsend's actions

---

[3] *See* Docket No. 22.

[4] *See id.*

[5] *See* Docket No. 33.

[6] *See* Docket No. 41.

[7] *See* Docket No. 45.

[8] *See* Docket No. 74.

[9] *See* Docket No. 94 at 16.

Case No.: C 10-080254 JF (PSG)
ORDER

3

warranted sanctions "for its failure to either properly move the district court for certification of an interlocutory appeal or to seek mandamus review from" the appellate court "when faced with an unlawful production order."[10]

## II.  LEGAL STANDARDS

The attorney-client privilege protects from disclosure confidential communications between a client and an attorney.[11] "[It] is intended 'to encourage clients to make full disclosure to their attorneys,' recognizing that sound advice 'depends upon the lawyer's being fully informed by the client.'"[12] The attorney-client privilege is strictly construed.[13] A party waives the attorney-client privilege by tendering voluntarily the contents of a confidential communication and such waiver may include all other communications on the same subject.[14] The party asserting the attorney-client privilege bears the burden of showing that it applies.[15] Also, it must prove that the privilege has not been waived.[16]

"An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."[17] "Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; court have no role in encouraging or forcing the disclosure – they merely recognize the waiver after it has occurred."[18]

---

[10] *See id.* at 18.

[11] *Hernandez v. Tanninen,* 604 F.3d 1095, 1100 (9th Cir. 2010).

[12] *See id.*

[13] *Weil, et al. v. Investment/Indicators, Research and Mgmt, Inc.,* 647 F.2d 18, 24 (9th Cir. 1981).

[14] *See id.*

[15] *See id.* at 25.

[16] *See id.*

[17] *Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir. 2003) (internal citations omitted).

[18] *Id.*

4

Case No.: C 10-080254 JF (PSG)
ORDER

    "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."[19] The doctrine of waiver is rooted in notions of fundamental fairness "that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of privilege to avoid disclosing those that are less favorable."[20]

    The fairness doctrine "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege holder's selective disclosure during litigation of otherwise privileged information."[21] "Under the doctrine the client alone controls the privilege and may or may not choose to divulge his own secrets."[22] "But it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut."[23] "From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder."[24]

    "Yet this rule protecting the party, the factfinder, and the judicial process from selectively disclosed and potentially misleading evidence does not come into play, when as here, the privilege holder or his attorney has made extrajudicial disclosures, and those disclosures have not subsequently been placed at issue during litigation."[25] "Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication – one not

---

[19] *See Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.,* 254 F.R.D. 568, 575 (N.D. Cal. 2008).

[20] *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340-41 (9th Cir. 1996).

[21] *In re Von Bulow,* 828 F.2d 94, 101 (2d Cir. 1987).

[22] *id.*

[23] *id.*

[24] *id.*

[25] *id.*

5

Case No.: C 10-080254 JF (PSG)
ORDER

subsequently used by the client in a judicial proceeding to his adversary's prejudice – does not waive the privilege as to the undisclosed portions of the communication."[26]

## II.     DISCUSSION

**A. Wi-LAN's Waiver of the Attorney-Client Privilege is Limited to the Townsend Letter**

Applying the law of the regional circuit,[27] the Federal Circuit confirmed that Wi-LAN's disclosure of the Townsend Letter waived both confidentiality and Wi-LAN's attorney-client privilege as to the Townsend Letter itself. The significant question on appeal was "how far the waiver extended" or what the consequences were of Wi-LAN's disclosure of the Townsend Letter to LG. The parties agreed that the Ninth Circuit has not spoken squarely on the issue. The Federal Circuit nevertheless concluded that the district court should consider fairness in determining the scope of an express extrajudicial waiver of the attorney-client privilege and referred to cases such as *In re Von Bulow, Chevron*[28] and *Mendelsohn,*[29] to support its view that the Ninth Circuit would endorse a fairness balancing.

Because Wi-LAN has never used the Townsend Letter in the underlying action, and has even explicitly disclaimed its use, Wi-LAN contends that any waiver should be limited to the letter itself. Wi-LAN notes that the Federal Circuit "relied heavily" on *Von Bulow* to conclude that a fairness balancing was required to determine the scope of the waiver affected by disclosure of the Townsend Letter. *Von Bulow* held that:

---

[26] *Id.*

[27] *See Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1209 (Fed. Cir. 1987).

[28] *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir. 1992).

[29] *United States v. Mendelsohn*, 896 F.2d 1183 (9th Cir. 1990).

6

Case No.: C 10-080254 JF (PSG)
ORDER

> [W]here, as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed.[30]

Wi-LAN notes that the *Von Bulow* court explained that so long as the original disclosures "are and remain extrajudicial, there is no legal prejudice that warrants a broad court-imposed subject matter waiver."[31] The reason for the distinction is that "disclosures made in public rather than in court – even if selective – create no risk of legal prejudice until put at issue in the litigation by the privilege holder."[32] Similarly, in *Chevron* the Ninth Circuit held that an express waiver of privileged memoranda before litigation commenced did not effect a privilege waiver beyond the documents actually disclosed.[33] Wi-LAN contends that the legal principle governing its privilege waiver is that an extrajudicial communication that is not subsequently used in litigation cannot, as a matter of law, waive privilege as to undisclosed materials. Wi-LAN's argues that it is undisputed that its disclosure was extrajudicial and that Wi-LAN never used the Townsend Letter in the underlying action. On those facts, LG has not been prejudiced and disclosure of the Townsend Letter did not waive privilege as to any undisclosed materials.

LG responds that it would be significantly prejudiced if waiver were limited to the Townsend Letter only. In the underlying action, the court granted LG summary judgment finding that LG's accused products do not infringe the '402 Patent. As the prevailing party, LG then moved to declare the case "exceptional" under 35 U.S.C. Section 285. The court denied the motion for exceptional case explaining that it would consider the motion after the Federal Circuit ruled on Wi-LAN's appeal of the summary judgment motion. LG believes that full disclosure of Wi-LAN's attorney-client communications will show that Wi-LAN and its counsel knew from the very beginning that its claims lacked any merit whatsoever. LG also argues that disclosure of Wi-LAN's attorney-client communications is necessary to determine why Wi-LAN shifted its theory of infringement. During post-licensing negotiations, Wi-LAN provided LG with the Townsend Letter

---

[30] *Von Bulow,* 828 F.2d at 103.

[31] *Id.*

[32] *Id.*

[33] *Chevron,* 684 F.3d at 1370-71.

7

Case No.: C 10-080254 JF (PSG)
ORDER

to induce LG to pay a higher royalty rate, including an analysis of a new single ratings system RRT-01. The Townsend Letter provides extensive attorney argument why LG's non-infringement position is wrong but falls short in providing any detailed analysis. LG points out that Wi-LAN shifted its theory of infringement from a multiple ratings system/downloadable RRT to a single ratings system/RRT-01.

The court agrees with Wi-LAN. The Townsend Letter is an extrajudicial disclosure which Wi-LAN states it has never used, and has even disclaimed, during the underlying action. Wi-LAN's position is further supported by the timing of the Townsend Letter – before the underlying action was even filed. Under these circumstances, the court is not persuaded that LG is legally prejudiced by limiting evidence to support its motion for exceptional case. LG has already prevailed on summary judgment of non-infringement on the merits. Similarly, LG's motion for exceptional case may be determined on the merits without expanding the scope of the waiver beyond the Townsend Letter. In addition, the court is not persuaded that LG is legally prejudiced by any lack of access to attorney-client communications regarding Wi-LAN's shifting theories of infringement. LG has the Townsend Letter itself to indicate that Wi-LAN shifted from its original position of infringement.

**B. Townsend's Noncompliance will not Subject it to Sanctions**

Townsend contends that sanctions should not be imposed because it had little choice but to not comply with the court's orders. In addition, because Townsend was successful on appeal, its decision to preserve appellate jurisdiction through noncompliance was justified.

LG responds that Townsend should be held in contempt and sanctioned. Townsend failed to comply with judicial orders, did not pursue certain options and instead attempted to stall the proceedings.

The court agrees with Townsend. Whatever its procedural failings in pursuing relief from the production order, the fact of the matter is that, according to the appellate court, Townsend had it right on the merits. Under such circumstances, the court cannot find that Townsend's efforts to protect its client's interests constituted sanctionable conduct. Sanctions will not be imposed.

8

Case No.: C 10-080254 JF (PSG)
ORDER

1  **IT IS SO ORDERED.**

2  Dated: February 25, 2013

3  _____
4  PAUL S. GREWAL
   United States Magistrate Judge

9

Case No.: C 10-080254 JF (PSG)
ORDER